The panel has before it three cases for oral argument. In addition, there are two cases being submitted today without oral argument, just on the briefs. Those cases are Goodloe v. United States Postal Service, Appeal 3271 from 2008, and Vorez v. Merit System Protection Board, Appeal 3325, also from 2008. Before turning to the argument list, the Court wishes to thank our colleague, 7th Circuit District Judge, Senior District Judge Richard Cudahy, who once again has come to sit with our Court as part of our ongoing program to have visitors from both the District Courts and, more recently, from the Circuit Court. So we thank you for your help and welcome you to the Court. The first oral argument is in Appeal 3244 from 2008, Felhoelter v. Department of Agriculture. Ms. Held, good morning to you. Welcome to the Court. Please proceed. Thank you, sir. As you all already know, I represent Kyle Felhoelter. He is a whistleblower in a claim against USDA. Mr. Felhoelter appealed his termination following the closing of the U.S. Department of Agriculture. I would suggest to you, Ms. Held, that we probably are quite familiar with the facts and the issues and that you might move directly to the core of your argument. One of your contentions, as I understand it, is that a motion to compel was wrongly denied, but the reasons given by the administrative judge included that it was untimely filed. Do you agree it was about a week late? Yes, Your Honor. And as I understand it, no explanation or excuse was proffered. So what is your basis of saying the judge had to overlook the tardiness and allow it? Is there something we don't know? Yes. Actually, I should say when I started that I wanted to reserve eight minutes. Done. But the excuse, I guess, or the rationale that was offered to the judge is that we were awaiting his ruling on the motion to dismiss. The agency had said we were not going to give you these documents because they are irrelevant if our pending motion to dismiss is granted. Was that their only objection to your request for documents, or did they also object on the content? There was a little bit of both. Often there are several reasons, but the ones that mattered were they were not going to produce these documents because they were, quote, irrelevant if the motion to dismiss was granted. So my thought was let the judge rule on the motion to dismiss and then that would mute the agency's argument and mute the motion to compel. They would just produce it. I waited about a week. I was in communication with counsel. It became clear we weren't going to get a quick response to the motion to dismiss, and so, in what I viewed to be an abundance of caution, I went ahead and filed my motion to compel. It was filed more than ten days after the responses were received. However, it was filed well before the discovery deadline and was filed… Was there some negotiation going on during any of that period between you and counsel for the agriculture department that you could also rely on as a reason for being slow to file? Yes, Your Honor, and the negotiations were let's get a ruling on the motion to dismiss and then that if the motion to dismiss is denied, then we will need to talk about producing the documents and also that we would need to talk about producing them subject to a confidentiality order. There's also some argument about whether you already had nearly all of the documents and that, therefore, you only wanted authenticated copies as opposed to unauthenticated copies. What's your response on that? That is not true, and, in fact, they would not be able to make that argument. They don't know what I had and what I did not have. It is true that we had submitted approximately 1,500 documents to the Department of Justice. However, in point of fact, those documents had to do with the alleged actions of the private milk producers who we alleged were violating the order. Did you get any documents from agriculture as a part of discovery? I got a few, very few. Were they all admitted? Most of them were not important for me to be, they didn't help my case. You didn't offer the documents you got? I did not offer every document I got, no. Did you offer a lot of the documents that your client had? I attempted to, yes. Were any of them admitted? As I recall, no. I tried to figure out, looking at the record, what documents were part of the proceeding below, and I had a terrible time figuring it out. Is there a list anywhere of what documents were proffered and of those proffered which were actually admitted, became part of the record, as opposed to being excluded? Well, I mean, the hearing was a mess. No, no, but I'm asking a very specific question. Is there a list anywhere that we can look at to see what was offered and what was excluded? No, Your Honor. Nor what was admitted? Correct. All right. Was any of the evidence that you sought to introduce evidence of disputed facts or was it cumulative material? Well, I wasn't allowed to submit any evidence that pertained to Mr. Fellholter's disclosures of the decision-maker's mismanagement of the order. I was not allowed to put anything. Well, of course, it was conceded, I guess, that he was a whistleblower. It was. So I was just wondering how much specific was known about that. Well, if you refer to the judge's decision, he states that the content of the evidence was excluded because it was irrelevant, because it pertained to the actions of the private milk producers. And in fact, Your Honor, I've stated over and over and over again to the point that I know I annoyed the judge, no, Your Honor, this is evidence, witness testimony and documents that pertains to the malfeasance of Mr. Friedley, the decision-maker in this case. But I was not allowed to present any evidence that I already had, and I was not allowed to obtain any evidence that I knew existed. The reason I knew it existed is because I represented the guy that created the paper trail of what Mr. Friedley should do and that he wasn't doing it. So I knew it existed. I knew specifically what it was. But I was not allowed to obtain it, and I was not allowed to submit it. Now, putting aside for a moment the failure for you to be able to obtain documents or get them admitted, in your brief you talk about, as I understood it at least, a deficit of $55 million or so that you say was owed by Valley Milk but not paid and that that was wrongly tolerated by the various agriculture officials and particularly Mr. Friedley. Yes, Your Honor. Am I right in understanding that that was your allegation? Essentially. I mean, any time you're dealing with USDA regulations, you are at risk of oversimplifying anything. Basically, $55 million was paid to Valley Milk and should not have been. Okay, I had it backwards. It's not that Valley Milk owed it to the government. The government paid it to Valley Milk, but it was in excess of what they were entitled to. Correct. And this was over a seven-year period. Correct. So it's nearly $10 million a year for seven years. Correct. If the allegation is correct. So that's a substantial amount of money in terms of, you know, the rubric of fraud, waste, and abuse and so forth. Yes. If the allegation is correct that it was wrongly paid. Yes, and I want to be clear, Mr. Feldholter did not suffer retaliation for making that disclosure. The retaliation did not start until he said, look, my boss is supposed to be not only not doing it, he's telling me not to do it. He's telling me he's going to fire me and perhaps subject me to criminal prosecution if I do it. This is the kind of evidence that I was not allowed to submit, and I think that it's evidence of pretty strong motive to retaliate. Now, what was the time sequence here? When did all that take place in relation to the transfer? Well, throughout the transcript, I mean, it was extremely frustrating. I attempted no less than, I counted, 50 times to submit this kind of evidence. The objection was sustained. No, no, I'm asking, the transfer, when he was transferred to Louisville, and when did that take place in relation to these other activities? Well, the first report was to the Inspector General. That occurred in December of 2004. That's the first time that my guy said, look, my boss is not doing his job. The decision to close the Knoxville office was made within a year, the opening steps of that disclosure. When was the filing with the district court? That was in, I did it, that was in July of 2005. And then there was also a filing with the Office of Special Counsel? That was in December 2004. Okay. So there were three different external complaints? Two. Two. Two, yes. Inspector General and Office of Special Counsel, but if you count the lawsuit, then that would be three occasions in which he went outside his own department with his charges against Frieden. Correct. And it all happened very close together. It happened between December of 2004 and July of 2005. Well, the government argues that the time sequence is totally different, that he started back in 2000 or 2001 with his whistleblower-type complaints, and it went on steadily for six or seven years, and that no action was taken against him until January of 2007, and that therefore it's all attenuated as the causation because there was such a separation in time. Right. That is their position. But their position forgets the point that the disclosures from 2002 until December of 2004 really did have to do with the actions of private milk companies. And my fellow did not suffer retaliation during that period. It was only when he started reporting Mr. Frieden's failure to take appropriate action that he suffered retaliation. And that's what made this so important. Starting in 2005, is that what you're telling me? December of 2005. December of 2004. OK. That's a help. Yeah. It's hard to follow the chronology here. Very hard. I've worked on it and worked on it. Bill? I just wanted to clarify. Don't worry about your time. We'll preserve your rebuttal. I wanted to clarify one point that you mentioned in passing, that you were unable to introduce evidence as to conduct of Mr. Frieden vis-à-vis your client. Now, your client testified as to what Mr. Frieden said to him, correct? Yes. So that evidence did come in through your client. I stay corrected. That part did come in through my client. And what was it exactly that you say was not allowed to come in along that line, the direct threats to your client? Yes. We had email, for example. One example that I know of is I had an email in which Mr. Frieden explicitly said to my client, you may not take this to the Department of Health. And then there was a note from a telephone conversation with Mr. Frieden that said, do nothing. You may not do this. I had a copy of this document. That email was followed by another document that said, if you go outside of this agency with this which is clearly authorized under the regulations, you will be terminated and you will be subject to criminal prosecution. And you tried to introduce these documents and they were excluded? Yes. Now, one other question. The letter to Mr. Baker, the cease and desist letter, you recall that? Yes. There was a colloquy in dealing with that letter. Now, I didn't see that letter in the record. Did you offer that letter into the record? I got cut off pretty quickly. Well, I know, but lawyers are lawyers a lot. And I'm sure you know that you just have to persevere and say, I offer it into evidence. You can't say, well, I guess I'm not going to get anywhere with this one, so I fold you 10. Did you offer it into evidence? No, not that particular letter. Now, the objections made to questions that you sought to ask of various witnesses, almost all cited relevance as the grounds. Yes. Ms. Tuck would say over and over, objection, relevance, objection, relevance, over and As I understand your theory, it is relevant under what I'll call the Ray factor, having to do with the strength of the motivation of one of the recommending or deciding officials to be motivated to retaliate. Yes. So your view of the case is it was relevant because Ray makes it relevant. Yes. And the government's view seemed to be, no, that's totally outside the scope of the hearing. Well So let me ask you the question. Was there any definition by the AJ of the scope of the hearing? Were there any motions in limine? Was there any articulation of what the issues were to be tried? The agency had filed a motion in limine to prohibit me from introducing any evidence that their subject matter expert determined was confidential and proprietary. The judge, as I recall, denied that motion in limine or at least held it in abeyance. The judge said at the beginning of the hearing, I'm going to presume that he's a whistleblower and I'm only going to hear testimony today regarding the agency clearing convincing proof that they would have made a decision anyway. That was the limited scope of this hearing. So that's why we get into the weighing of the evidence. And the judge ruled against me saying that they had all kinds of evidence that this was a legitimate business decision and I had nothing having to do with the decision maker's motive. The agency did, and I'm glad you brought this up, keep saying relevance, relevance, relevance because what they were trying to say was that I was trying to introduce evidence that went to the reasonableness and sincerity of my client's belief. And the judge bought that argument. In fact, and I kept trying to say this, what I was saying is no, this is evidence to what he knew when about the course of the investigation and to him. We weren't talking about... He being freely. Freely, yes. We were not, that's what I could never get to. I could never get to. All right, let's hear from the government and then you can have your eight minutes for rebuttal. Thank you. Ms. Kim Miller, good morning, welcome back to the court. Good morning, thank you. Help us out here. Of course, Your Honor. Examination of the administrative judge's procedural and evidentiary rulings here does not reveal any abuse of discretion, but... Well, that's the issue in the case. We understand what your position is, no abuse, and she says there is an abuse and we have to decide. So help us understand why it would or wouldn't be an abuse. Right. Well, and I would like to add that even if we were to assume that there was some abuse of discretion in these evidentiary rulings, substantial evidence still supports the administrative judge's determination that the agency would have reassigned Mr. Fell Holter and closed the Knoxville office. Let me ask you a broad legal question. Is there an important difference in whistleblower law between could have justifiably taken the action that's now contested versus would even in the absence of the whistleblower? Yes, I believe there is a difference. So that even if an agency had ample justification for taking a certain action, just viewed in isolation, if the actual reason, assuming this could be proven, was to get rid of somebody, then that would be retaliation, even though they had justification absent the motivation to retaliate. No, Your Honor. In fact, it might be nearly the opposite of that. The question whether the agency would have taken the same action, even in the absence of the whistleblower disclosure, is sometimes treated as the fourth inquiry, after the appellant has already made a prima facie case. Now, as part of that prima facie case, and what was assumed here by the administrative judge, is that the whistleblowing did, in fact, provide a reason for the disciplinary action. No, no, not did. Could have. The assumption of the judge was that given the timing and the basic facts that weren't disputed, the whistleblowing disclosures could have influenced the decision. Well, the prima facie element requires a showing that it was, in fact, a contributing factor, and that's what was assumed here. Mr. Fellholter contends that the administrative judge assumed there was no link whatsoever between a motive to retaliate and the decision to close the office. The administrative judge, by assuming the contributing factor, acknowledged the existence of some retaliatory motive. OK, maybe so. What I'm trying to understand is how the law is supposed to work here. On the one side of the ledger, you've got motivation as relevant to the prima facie case, but here that's assumed. On the other side of the ledger, under Ray and Geyer and these other cases, you have this inquiry into how strong was the motivation to retaliate on the part of those alleged to have retaliated. And it seems like that's a separate inquiry, and even though they both deal with motivation, it seems like they're both required if there's a proffer of evidence relevant to motivation. So then why would it be correct for the administrative judge to uphold all those objections based on relevance? There were like 45 of them or 50 of them, and every time the judge, in the face of the relevance objection, said sustain, but it's unclear to me why it isn't highly relevant, because it dealt with motivation, which under Ray is still in the case despite the assumption of a prima facie case. I'd like to make several responses, the first being that the administrative judge did in evidence about motive. It's not as if every proffer of motive evidence was denied. I'm just dealing with the objections that were sustained. I'm not quarreling that some objections were overruled, and in some cases objections weren't even made, but focusing on the universe of 50 or so times where a relevance objection was made and virtually always sustained, it looked to me, but maybe I'm wrong and you can help me out, that it would have been relevant because it went to motive, and that was the argument Ms. Held kept making, and the judge said no, not relevant, I sustain Ms. Tuck's objection, and I couldn't understand why the judge thought it was not relevant to motivation. Can you help on that? Yes, Your Honor, and as an initial quick point, I would like to point out that we've gone through each of the cited pages and found 43 total objections, 15 of which were overruled, the administrative judge asked the question himself, withdrawn, in other words, the evidence came in. Many of the remaining questions, some of them were obviously not relevant to motive. Some of them is an asked and answered objection, so the evidence had already come in. Well, I'm only talking about the ones where relevance was the sole ground cited and it was sustained. Okay. For many of those objections, the question went to the truth of the underlying disclosure. Why is it that relevant to motivation? Because the administrative judge had assumed the truth of the underlying disclosure. Whether Mr. Fellholter had proven or had evidence to really show that milk producers were violating the law, that the agency had engaged in mismanagement, all relates to whether there had been a protected disclosure made. It's a separate question what Mr. Freedly, the deciding official for the removal, what intentions he had toward Mr. Fellholter. What's the logic of making this distinction? If I'm an official and I'm accused of wrongdoing by a whistleblower and the allegations are false, I might be much less worried. If the allegations are true and they're serious, I might be hugely worried and therefore I might, if I had a certain bent of mind, be motivated to retaliate against that person to try to frighten that person into knocking it off, keep quiet. That may be the case, but it would require the hearing to have delved into the truth of those underlying allegations. And this court has approved of an administrative judge bifurcating, or perhaps there would have had to have been three, I'm not sure what the exact word would be, but dividing up the hearing in this manner and first addressing whether there was clear and convincing evidence. And leaving for later, assuming that the agency can't make that showing, the truth of the disclosures. Did the official engage in mismanagement? Did the official not engage in mismanagement? Yes, there is some logical overlap between all of these things, just as there's that overlap between the existence of the contributing factor and this one ray factor, or car factor, whatever case you happen to be looking at. But those factors, importantly, are not required elements of proof for the government's case. They're simply factors that the administrative judge uses and considers when weighing all the... And so I wanted to be able to put that in, and I was blocked at every turn and so on. And you seem to be saying, well, it wasn't properly in because it's not part of the government's case. Well, of course it's not part of the government's case. It's part of her case. She's the one offering it. So to say the government doesn't need to prove that's irrelevant. She's trying to put in her case. She's blocked on the ground that it isn't relevant, and you're admitting that there's enough overlap that maybe it is relevant, I think. No, Your Honor, and I didn't mean to give that impression. When I was saying it's not a point of the government's proof, I was not intending to make a point about how the administrative judge conducted the hearing, but to make the larger point that even if this court would have reached, sitting in the seat of the administrative judge, would have reached very different conclusions on these evidentiary rulings, which, of course, is not our standard of review here. But even if Mr. Feltholter had proven a significant motive to retaliate, the evidence of the legitimate reasons for why the government had to close the Knoxville office and consolidate it with the Louisville office are overwhelmingly would provide substantial evidence to support the... But substantial evidence is not really the test when you're talking, is it, when say, well, it's true that... I know this isn't exactly your argument, but nonetheless, to the extent that it is, you can't say, well, you know, it's true that a lot of relevant evidence was excluded, but nonetheless, there was still enough evidence left to provide substantial evidence for the result that was reached, because if the adjudicator doesn't have access to all the relevant evidence, then we don't know whether the adjudicator would have reached the same conclusion, even if that conclusion is still supported by substantial evidence, right? Isn't that the problem here? Well, first we... You understand what I'm saying? I believe so, and we would disagree that it's in fact relevant evidence, but... Well, I understand, but if it's relevant evidence, then you can't say, well, it's okay that it was excluded because there was still substantial evidence. You can say that it's okay that it was excluded because there's no way that an adjudicator could have come out any other way, and therefore it was harmless to exclude, but that's a very different point from saying there was still substantial evidence in the record to support the result reached, correct? Yes, there is a difference, although... And you would acknowledge that substantial evidence is not the right test for determining whether there's prejudice, correct? That's right, although the test is not that there's no way that it would have had an impact on the outcome. It's that the appellant has to show a likelihood that it would have changed the outcome. But we're talking about harmless error. We're not talking about substantial evidence, correct? That's right. All right. But for looking at the evidentiary rulings, and in addition to that, it has to be an abuse of discretion, not merely an incorrect evidentiary ruling that another judge would have made in another way. Help me with, if you would, with the evidence, direct evidence pertinent to Friegle's interactions with the appellant. In particular, this email that Ms. Held says was excluded, offered but excluded from evidence. Help me with that. Your Honor, I don't believe that there is a copy of that email in the administrative record. What I do know, which is very... I'm sorry, I didn't mean to interrupt. Go ahead. There's a very similar document found at pages 137 and 138 of the record, and this is from Mr. Friegle to Mr. Fellholter in August of 2005. Now, at that point in time, the district court case had already been filed, and it was still approximately... No, that's not an email. No, it's not an email. Okay. I'm saying that this is the piece of evidence that I'm aware of that has the same sort of content that Mr. Fellholter's counsel was describing in the particular email. And the concern of Mr. Friegle throughout was that the documents that Mr. Fellholter had access to are provided from milk producers to the government with an understanding, both regulatory and I believe statutory in some cases, that this information would remain confidential. And Mr. Friegle was informing Mr. Fellholter and reminding him of the duties to keep information, certain information from milk producers confidential and the proper uses of that information. Okay. Was this document introduced into the administrative record? This is in the record. I don't recall whether it came into the hearing or was perhaps an exhibit to... But this was admitted and was before the administrative judge in connection with the adjudication? Yes, Your Honor. How do we know that? Because we do not have in the record evidence that was not admitted. We have in the record the evidence that was before the administrative judge and appears on the certified list as having been part of the record based on which the administrative judge made his decision. Does the certified list enumerate and describe every document that was admitted into evidence in the proceeding before the administrative judge? Not in that level of detail. It has entries, for example, a witness list, an exhibit list that a party submitted. It does not summarize. There's no summary in the record of post-hearing what came in, what did not come in. Now, one of the problems, I think, in these administrative hearings, and I think this is particularly true in my experience with the Board, is that there isn't really a formal process as there is typically in a district court in which you mark a piece of evidence for identification, you move its admission. The admission is ruled on, and if it's ruled excluded, it remains part of the record on appeal to the extent that you want to argue that it should have been admitted, but to the extent that it's admitted, it becomes part of the body of evidence that the fact finder is to decide on. Now, I don't see, you're telling me that this document was admitted into evidence by the administrative judge or otherwise was, let me put it this way, was not excluded from consideration by the administrative judge so that it was open for Ms. Held to argue from this document before the administrative judge. Is that your representation? I see that my time has started. Your Honor, I don't know for certain. I wouldn't be comfortable making that representation as to this one document, but I would like to point out that the administrative judge heard evidence of Mr. Friedley's knowledge of the disclosures, where Mr. Feldholzer had taken them, that he had made what he had alleged. Well, there is a big difference. Isn't there between the complaining party saying, here's what I was told, and the complaining party having a document that says, and here's the document in which he told me that. I mean, you can't quarrel with the words on the page. You can quarrel, or quibble at least, with the testimony of the interested party. Wouldn't you rather have a document that supports you than your own testimony as a party? Certainly. Of course, here the administrative judge had again assumed that these disclosures had taken place and were truthful. Well, but as the chief judge pointed out, you can assume something abstractly to be the case, but that doesn't necessarily tell you anything about the vehemence of the sentiment that's underlying the assumption, right? I mean, one of the factors that's important is the strength of the motivation. If somebody has a very strong motivation, which has been expressed in very strong terms, that colors one's view as to whether maybe it was possible that the steps that were taken against the person were indeed retaliatory, right? Yes, and I think that if, I mean, I'm not aware of any such documentary evidence that says this kind of motive. In fact, Mr. Fellholter had an opportunity to ask direct questions about motive at the hearing and did so. Well, I guess when I say motive, I mean, I think Ms. Hill's view is that either this letter or an email, or if there's no email, presumably this letter, is evidence that would tend to support the argument that Mr. Friedli felt very strongly about this matter. Now, that's why I'm really concerned about whether this letter's in the record or not, was before the adjudicator. If it was, then what error was committed? If it wasn't, and if it was offered but refused, then it seems to me there is something of a problem potentially. And is there a way that you can find out whether this actually was before it was admitted, for whatever that means in this context? I was just going to make that offer and say that I'm happy to try and find out and provide the court with supplemental filing. Now, you were about to argue, I think, or maybe you actually did, that even if testimonial or documentary evidence was wrongly excluded, there was only a minor error and didn't rise to the level of abusive discretion. And I thought you then were beginning to go on to say, and even if it was an abuse of discretion, it didn't matter because it wouldn't have changed the outcome here because no harm has been shown by Ms. Held's side. Yes, Your Honor. That's your position, and you so wrote in the brief as well. Now, what's the basis of saying there's no harm? If the ray factor seeks to calibrate the intensity of antagonistic motivation by the actor, in this case, Freedly, and the questions and the documents would seem relevant to making that assessment, calibrating the strength of the motivation, then how can you so confidently say, well, it wouldn't have made any difference? For several reasons. The first being that the administrative judge did acknowledge that complaints against government officials were part of this, but provided additional reasons, which told you that the disclosures really centered on the private milk producers. And Mr. Felholter's own filing, some of them to the administrative judge, summarized the disclosures in that fashion, that they were really focused on the private milk producers. For example, that- Well, the $55 million allegation is not focused on private misdeeds of the milk producer. It's focused on the failure of the government agencies to prevent those improper payments over seven years, totaling over $50 million. And that's, again, what the administrative judge assumed, that there had been this disclosure. And just to clarify, this is not government funds that we're talking about. It's a cooperative fund administered. It maybe didn't come from an appropriation by the Congress, but it's money that Mr. Freedly and the other officials were trustees of, had public statutory regulatory responsibility to manage in accordance with law. The allegation is that they managed it against the law, not with the law. That's correct, Your Honor. And even after those disclosures, the employees from that Knoxville office continued to have their same auditing responsibilities for those companies. They were offered to- Well, what does that prove? If the auditing was done wrongly beforehand, with the result that money was paid out that shouldn't have been paid out to Valley Milk, to then say, well, even after these actions, the auditing still continued. Well, if it still continued on this wrongful basis, how does that prove anything? The allegation was not that the auditors were doing anything on a wrongful basis, but that the managers were not taking appropriate action in response to the audits. Good. Those employees- Exactly. Especially Freedly. Yes, that's right. But these- So how does it help make Freedly look less motivated to be angry to say, well, the audits continued in the ensuing years? It seems to me it's a non sequitur. It doesn't prove anything that's relevant. Well, I'd submit that the relevant question is not, was Mr. Freedly angry? But what were the agency's reasons for closing the office? They had a shortfall in funds. There were only two offices. We know all the reasons, and they all make very good sense, and very convincing as reasons that could have justified closing the office. But it seems to me the issue in this case is not could they have justified it, but what was the real reason they did it? Now, Feldhelder argues, and I have no idea whether it's true or not, but Feldhelder argues that the real reason was they're trying to get rid of me and terrify these other people into silence so that this wrongdoing would never come to light in an effective way. Again, I don't know if that's true or not, but it's very hard for me to understand the government's position here. To what extent under the case law does this strength of motivation enter into the calculus here? I mean, apparently the cases say that as long as the agency has good reason to do what it did, you can at least minimize the importance of the motive, or it sometimes drops out of the equation or something to that effect. But is there a case law effect that the motivation is strong enough? It doesn't matter whether the government had good reason to do what it did? I think there can be examples found of cases going in every direction. You're saying that I gather in part that the motivation was not relevant, that the strength of the motivation was not relevant. I'm not sure that you're saying that directly, but that sort of underlies part of this discussion, it seems to me. I'm just trying to get a little sense of what the case law says on that subject. Well, at the stage of a prima facie showing that the employee really is a whistleblower, we have the contributing factor analysis. Did the protected disclosure, was it a contributing factor to the decision to take the disciplinary action? Well, he's sort of a generic whistleblower, but we don't know how painful his whistleblowing was to somebody else. That seems to be what some of this is getting at, I guess. And that goes to the weighing of the car factors or ray factors. And there are cases finding that two of the factors strongly outweigh a third. They can go in all different directions. There have been at least one board case, which I'm aware of, where they said that the discipline itself, or rather the misconduct itself, was so obviously wrong and needed to be corrected that the car factors didn't really matter, even if there had been a really strong motive. So these are all factors that wind up being balanced in a way to make that ultimate determination whether the agency would have taken the same action, even in the absence of the protected disclosure. And, of course, that's what we contend happened here. What's your answer to this hypothetical? Suppose that we face a whistleblower case in which the agency has ample evidence that would justify the action actually taken. But suppose we have a memo in the file where I, the actor who took the hostile action that resulted in Judge Brayson being fired, let's say, in which I write in my memo, this is just a pretext. We say we're firing Brayson because he didn't turn in his time records for our law firm. But the real reason is Brayson nicked my car in a minor fender bender and I'm just livid at Brayson so I'm looking at some way to get even with him. Now, the facts are that he didn't fill out his time records and in our law firm under the partnership agreement, let's assume, that's a basis for dismissal. So I'm going to dismiss him ostensibly because he didn't fill out time cards. But the real reason, clear from my memo, isn't anything to do with time cards. It's because I'm furious with him for something unrelated to time cards. Now, in that case, does the fact that there was a proper reason that he could have been fired protect me or does my own memo admitting that my real reason was anger unrelated to the time card mean that I'm guilty of retaliating against him? Your Honor, I think that could come out either way, perhaps depending on what the other evidence was. So, for example, how were other judges who failed to fill out their time cards treated? Well, wait a minute. Isn't the answer, I thought you were going to say, that the way the statute works is you ask a different question from either of the two alternatives and you ask the question, what would have happened? And can the government, or in this case the law firm, make a showing by clear and convincing evidence that I would have been fired for failure to fill out the time sheet? Not that I could have been, or not even that it was an absolute firing offense, but would it have happened, notwithstanding the car incident, right? Isn't that the right test? Yes, and I apologize. I think I left out a step in my logic. The question would be, would the firm have taken the same action even in the absence of any whistleblower? So it isn't enough to show that the firm would have had the right to take the same action because maybe they pass on firing people for the kind of problem, and if they do, then we know they would not, or we can infer that they would not have fired me for that issue, in which case I win my case, right? That's right. And so in here, the fact that the agency had a right to remove Mr. Fellholter for failure to accept a reassignment is not the end of the inquiry. That's why the administrative judge went on to consider these, or even the question whether the agency had a legitimate management basis for closing the proffered and bona fide reason. Of course, the court doesn't get into the underlying assessment of what those management reasons were, but yes, the fact that the agency may have had a right to do this doesn't answer the question. But what does answer the question is looking at the reasons that the agency explained for why it took the action separate and apart from the protected disclosures, and those show quite strongly that in this milk order with only two offices and the smaller of the two offices operating at a deficit and milk producers consolidating and many of the other problems they were facing, they would have consolidated the offices. All right. Thank you. Let's hear from Ms. Held on rebuttal. Your Honor, I'd like to take my rebuttal time to hopefully get this a little organized. Can you start out, if you would, by telling us what the state is? First of all, is the 137, 138 letter in fact the document? I think you referred to it as an e-mail, or is there a different document that's an e-mail that we don't have? Oh, yeah. There's a different document that's the e-mail that you don't have. And what did you offer it? Attempted to. It got cut off before I could even get to the point. Well, you attempted to. I know. Did you offer it to the administrative judge and say, please accept this document into evidence? In those words, no. In those words, no. Any words? What I attempted to do was I attempted to elicit testimony from a witness with regard to the contents of this e-mail. As I recall, and I'm going from memory, the objection at the time, I can't remember if it was relevance or whether it contains confidential proprietary information. I got both in quick succession. But I believe it was relevance, and I was not able to introduce this document because of the same objection. It's irrelevant. It goes to the issue of the reasonableness and sincerity of his beliefs, which is not an issue in this hearing. And how about the letter at 137, 138? Was that in evidence? The letter was part of the record. I had the same problem that the court referred to. It was a part of the administrative record, which the judge would have had access to. It was never introduced into evidence. Right. My understanding is that if it's in the administrative record and isn't stricken from the administrative record, it is something that's open for the administrative judge to look at. And for you, therefore, to argue from? Yes. Okay. Yes. I wanted to address Your Honor's question earlier about how the analysis of this works. Counsel is correct. We had to make a prima facie case that it was a whistleblower, and the judge assumed that we had met that standard for purposes of the hearing. At the point where we have established our status as a whistleblower, either through assumption or through evidence, the judge, the agency, has to show, and that the burden is on them by clear and convincing evidence, that they would have taken the action anyway. And under the Ray factors, there's three things they consider. The strength of the agency's business justification, the strength of the motive to retaliate, and how other people similarly situated to Mr. Fellholter were impacted by the decision. The judge, in this case, I was looking at the initial decision, spent six pages talking about how the agency offered lots and lots of evidence pertaining to the business reason for it. The only thing the judge had to say about my motive was, assuming for the sake of argument the appellant made one or more whistleblowing disclosures, the appellant's disclosures center on the actions of private milk producers, not government officials. Moreover, although the appellant does contend that government officials should have taken remedial action against these producers, the central focus of his complaints is that adulterated milk was placed on the market. That was, in fact, the central focus of his complaints from 2002 to 2004, and he suffered no retaliation. But from 2004 to 2007, he's like, my boss was supposed to be doing something about this and ain't. And for that, he suffered retaliation. And it is that evidence that I was precluded from putting in. The reason that this is important and affects my client's substantive rights is the judge was required to weigh the substantial evidence that the agency put in that they would have made this decision against evidence that I would put into the record about the motive to retaliate because I was not allowed to put in my evidence on motive. He could not weigh the evidence. He couldn't logically do it. And we contend that that is an abuse of discretion. So I hope that that helps organize things somewhat. I can give a specific example, Your Honor, and I think this is what you've been wanting me to do all day, of evidence that I formally attempted to offer it and it was objected to. I found an example. There were several, but I found an example in the record. I was attempting to cross-examine one of the two decisions. You know, I think if you can bring that up to the lectern, you'll be heard on the tape. Thank you. If you argue from back there, we lose your voice on the tape. Thank you. Thanks for the tip. Although we have a good tape system, so it probably works anyway, but just to make sure. On page 618 and 619 of the Joint Appendix, I was questioning Mr. Newell, who is the Chief of Border Operations, who testified in the Federal District Court case, or actually he submitted an affidavit in the Federal District Court case, that he was personally involved in the decision to close the Knoxville office. The quote was, I approved the organizational changes that involved the closure of the Knoxville office. That was an affidavit. I attempted to submit that affidavit, and the judge, Ms. Tuck, objected on relevance, and I said, Your Honor, I'm about to impeach this gentleman's testimony. The relevance is his level of involvement in the decision to close the Knoxville office. This was following a statement made by Mr. Newell that he did not have anything to do with the decision. I attempted to submit this affidavit, and the judge said, I'll sustain the objection. My response, Your Honor has admonished me not to make speeches, so I won't. We would simply suggest that as an offer of proof, and with an issue that goes directly to Mr. Newell's credibility, this affidavit, and that's where I'm holding it, attempting to get it in, it's Exhibit 1, Declaration of William Newell, Paragraph 9. So there is one concrete example. Certainly evidence is relevant to impeach. And do we have that affidavit in the appendix? No, it's not, because it's not part of the record. But this is what I ran into that the court referred to, where I'm attempting to introduce documents, and I can't even get them into the record. There's no mechanism for me to do that. And what is the pertinence of Mr. Newell's involvement in the closing? Well, Mr. Newell was who investigated Mr. Friedley's, the allegations of Mr. Friedley's malfeasance, number one. During the course of that investigation, he engaged in a conversation with my client that discussed openly the potential closure of the Knoxville office. Right. Three, he participated in the decision to close the Knoxville office. Well, but what I'm having a hard time, the thrust of your case, I take it, is that Mr. Friedley, being the target of at least the later disclosures by Mr. Feltholder, was the person that engineered the closing of the Knoxville office and the transfer of the people to Louisville. Why does it matter the extent to which Mr. Newell was involved? That's what I'm having trouble with. Well, Mr. Newell was who investigated a case on behalf of the Office of the Inspector General. He was the fellow who was assigned to get to the bottom of this. I mean, is your argument that Mr. Newell was also retaliating against Mr. Feltholder? Mr. Newell was covering his colleagues' back. That's the thing. So I'm having a hard time seeing the pertinence of the Newell affidavit and the whole line of inquiry as to Newell's extent of involvement. It seems to me the more people that were involved in the decision, the more damaging it is for your client. If the entire agency was involved in the decision and everybody agreed all the way up to the Secretary of Agriculture, then your case... My case would be weaker. I would not want to make that case. No, Mr. Newell was testifying at the time that he had no involvement in the decision. Okay. And I had an affidavit from him saying I approved the decision to close the Knoxville office. Right. And so the reason I was offering that testimony was merely to impeach Mr. Newell's credibility at the court. The reason I bring it up, this example, at this juncture was because I was attempting to answer the court's question about why things don't appear in the record, and I was trying to come up with a concrete example of me attempting to do that. All right. I'm out of time. You all want me to keep talking? No, I think we have your position well in hand and also the government's, so we thank both counsel. We'll take the appeal under submission. Thank you, Your Honor.